Good morning. May it please the court, with the court's permission, I'd request to reserve two minutes of time for rebuttal. Sure. Thank you. There are two issues in this case, and both relate to whether the victim impact statements in this case, whether the district court permissibly struck them, both from the PSR and from the record it's sentencing. In this case, there's no dispute, and the defendant doesn't dispute, that these individuals did constitute victims under 18 U.S.C. section 3771. Specifically, they were directly and proximately harmed by the offense committed by defendant. There's no dispute on that, that your opponent admits they're victims. Correct. And in fact, the district court didn't really dispute that they were victims. It simply stated that it found the letters confusing and that it thought that the government could make its point without the benefit of the statements. But the victim's rights under this statute are not limited simply to having government advance their interests. It's also being able to be heard, to have their own voice at the sentencing. Well, they were heard. The judge did read those letters, said he read the letters. And I think what bothered him was there was so much emphasis in the letters about how this all came about. You know, one of the great tragedies we have in this country is that fathers and brothers and others in the family abuse young girls. And this was terrible. And that's what you got out of the letters. But this Mr. Burkholder, there was no emphasis on his contribution. He just got some bad, obscene pictures, I suppose, through the Internet. But the judge was aware of all of this. And what he did was he didn't think that those letters ought to be made part of the probation report. That's what he was concerned with, because the probation report goes up to the prison officials, right? Correct. And then they're there, and it stays with them. And there's a lot of consequences from that. But I think he thought, well, that's fine, and this is a terrible situation, and this young lady, now an adult, suffered greatly. And so all of that was made known to the judge. And he's the sentencing authority. So she was heard. And this letter that he got, wasn't that a letter that was prepared early on and used in a number of cases? That's correct. And so it wasn't a letter really directed to him. It was just a letter just talking about what she went through, but mainly focused on her rotten father. Well, if I might address that, first with respect to the victim impact statements. Each of them did, in fact, address, her letter did specifically address at length her reaction to knowing that other individuals looked at these images. So it didn't just apply to the underlying abuse and molestation. It also specifically described her reactions and also the reactions in another statement of the boy to knowing that there were individuals out there who collected these images. Well, I know. I wanted to ask you this. Do you have any authority which supports your view that everything in a victim's impact statement has to remain in the pre-sentence report? In the pre-sentence report, under the version of Rule 32 that applied at the time, it was verified information about the victim impact. No, I didn't ask you that. I said, do you have any authority that says everything in a victim's impact statement must remain in the pre-sentence report? I would say. Yes or no? I said Rule 32, no. And let me point a couple of things out to you. Under Rules of Criminal Procedure, Rule 32, subdivision I on sentencing, A, the court has some duties on a pre-sentence report. For example, if there's anything in dispute, the court under subdivision B must make a ruling whether that stays in or out. Isn't that true? Yes, that is true. Wasn't there a dispute in this case as to whether this victim's impact statement was proper and applied to this crime, one? And number two, whether it was defective in the sense that a notice in advance had not been given to the defendant. If I might address the issue of notice first before addressing your first point. With respect to the issue of notice, the PSR itself did include a PSR from the victim impact statement. That was provided in a timely manner. I know. I don't want to dispute. I don't want to answer the dispute. But at least there was a dispute, wasn't there? There was not. The defendant never objected to the statements on the grounds that they, in fact, were not victims of the defendant's offense. The defendant, in fact, pled guilty, and this goes to Judge Pregerson's earlier question, to a crime, one of the elements of which is that the defendant knew that the images were produced using an actual minor. Well, my point is the judge does, under Rule 32, have a right to accept, reject, and redact information in a pre-sentence report, doesn't the judge? The judge does, but in this case, the judge did so on a basis that is not recognized or supported either by Congress or by the courts. The courts have consistently found that. is to read into something that requires everything in the victim's impact report to go in the pre-sentence report, even if it might be unduly prejudicial to the defendant and last against the defendant for years and years and years. And it seems to me that the crucial issue, which you have not faced, is whether or not the court has discretion to cut something out of the pre-sentence report. And it seems to me, and this I want you to address, that Rule 32 gives that power to the district judge. If the victims at issue, in fact, did not meet the set, if the individuals who were submitting the statements were not, in fact, victims, then the CBR would agree that the district court had discretion to strike them. If the statements were not relevant to the offense, then again we would agree that the court had discretion to strike them. Here, however, the defendant doesn't even contend that these were not victims of his crime. And the statements did. In fact, the district court didn't even just strike the parts that he thought was irrelevant. He struck everything, including parts of the statement that went directly to the harms that the individuals felt because they knew that individuals were out there, individuals like the defendant were out there collecting these images that were taken during a rape conversation. Ms. Voights, if I could interrupt you for one moment. It's Judge Gould with a question. I share some of Judge Bright's concerns, but I'd like you to focus me on this language. In the victim rights statute, I understand the victims have rights to be heard and that these are victims. And I've written a few opinions about how child porn isn't a victimless crime. And the judge recognized that. So everybody knew that in the courtroom. But now, if the victim rights statute says they have a right to be heard, okay, well, they could have shown up in court. They didn't. They had statements. The judge said he read their statements. What in the victim rights statute says that they have a right to have their victim impact statement appended to a PSR? Well, with respect to the PSR, we'd argue that that is controlled by Rule 32, not by Section 371. They do have a right to reasonably be heard at sentencing. And in this case, they did that through providing statements. And while you're correct that they did not appear at this hearing, in cases, for example, where one of the victims in this case, her images have been widely, widely disseminated, it would be virtually impossible for her to appear at every sentencing. Are you saying in response to my question that there is nothing in the victim rights statute that gives a right to have your victim impact statement appended to the PSR and that your argument on that rests solely on Rule 32? Looking at Section 377.1. You can answer that yes or no. I believe that they have the right to be. Well, can you answer that yes or no? He asked you a question. You can answer it with yes or no. To the extent that the victim impact statements were made part of the PSR, we do think that was part of 370 on the right to be reasonably heard at sentencing. Well, you're not answering the question. You could answer yes or no. The answer is no, it does not rely solely on Rule 32, that we do believe that part of the right to be reasonably heard at sentencing, there are a number of ways in which the victim could be heard. Okay. Then my question, counsel, then my question, I feel a little like I'm back in a deposition. I should have the court reporter read it back to you. But my question is, what is the language in the statute, the statutory language that you think supports a requirement to append, mandatorily append these to the PSR? Assuming you're not just, as you've just said, relying on Rule 32, what is the statutory language that you're relying on? The language that we're relying on is the right to be reasonably heard. Would it require, necessarily, the appendage of the victim impact statements? No. Okay. So if they have a right to be reasonably heard, and the judge has read their statements, like what in the statutory language suggests that they have a right to have their statements attached to the PSR with all the attendant consequences that would have? Well, in this case, this was how those statements were presented to the court. They were how they became part of the record of the proceedings. In this case, because they were struck from the record of the proceedings and from the PSR, they're effectively no longer part of the record. And as a result, the victims didn't have it. They were heard by the judge, but they were not heard, in fact, as part of the proceedings. Well, let me ask you this question. Suppose there was a victim who testified in court, and it was in the transcript. Does the transcript go to the Bureau of Prisons, or does only the PSR go to the Bureau of Prisons? I believe it's only the PSR that goes to the Bureau of Prisons. So what you're saying, as I see it, is if a victim testified, that's good enough. She was heard or he was heard, and that doesn't become part of the PSR. So what's the difference with a statement that the judge hears and says it's not going with the PSR? Well, again, under Rule 32, it is required to be, they are required to include information about the victim impact. And here that's what these statements went to. They went to the impact on the victims of knowing that these images were out there, that they were being collected by individuals like defendants. All it says, the victim has the right to be reasonably heard. It doesn't say anything more than I can, you know, I'm looking. I want to find your authority where the United States of America can say to the judge, this, you do not have the power to strike something that you feel is prejudicial from the pre-sentence report. And I can't, I've looked through the cases, I've looked through the statute, and I say to you, I know you say it should go, but you have to have some statutory or case law authority. And I haven't been able to find it. I believe it exists under both 3751 and Rule 32. The PSR is not a document that, with respect to the PSR, that's a document that's kept confidential. It goes to, there are prisons that has limited, but it is something, you know, The victim impact statements were, they were a part, appropriately part of it, and they were appropriately before the court. And what you don't tell me is why in the world the victim impact statement is so important that it has to go to the Bureau of Prisons. Well, because Rule 32 requires that information about the impact of the crime on the victims be included in the PSR. It's part of what is required. But, of course, the court has control over what is in the PSR. And you haven't answered that either. Well, I've agreed that the court does, we do agree that the court has control over what is in the PSR, but the court has to have a basis for striking it. In this instance, the defendant never challenged that these individuals were victims. There's, has never challenged that there are portions of the statement that were directly relevant. Your red light's on, I think. I apologize, Your Honor. No, that's okay. I might have a minute to respond in rebuttal. Sure, we'll give you a minute. Thank you, Your Honor. Let me just ask you this. When did defense counsel get a copy of those letters? I believe, in fact, I'm not entirely sure when they did. Well, they got it right at the time of the sentencing hearing, didn't they? I was not at the sentencing hearing. I don't know. Well, but what, but you should know this. Yes. My understanding is that they were, obviously, they were given portions through the PSR, and it was, as I understand, the prosecutor's belief that the PSR. They got those letters when? When did they get them? My understanding is that they got, well, they certainly got all the letters when we filed the pre-sentence report. We contacted the probation office to confirm what letters they had. They provided us the letters. So why didn't they get them before they walked into the courtroom? I don't know, Your Honor. We believe that because the PSR said that they were attached to the PSR. My understanding is the prosecutor believed that they had been provided with the PSR to the defendant. The prosecutor did not realize that they had that. Well, the prosecutor gets a copy of the PSR before the hearing. Correct. Well, what did the prosecutor do here? Walk in and just hand defense counsel those letters?  Well, I'm not talking about that. I'm talking about courtesy from one lawyer to another. I'm not talking about striking it. Because that goes on, doesn't it, where things are held back by the government  I mean, we see that. We know that goes on. You're not denying that, are you? We certainly conceded that letters should have been provided to defense counsel. Yeah, okay. What we're asking is simply that the victims in this case not be punished because there was an error in providing their statements. The appropriate thing would be the law to be sentencing by the defense counsel. We're not punishing the victims. Why do you talk to us that way? Why do you talk to us that way? We're not punishing the victims. You know, we feel very, very terrible about this and what happens to people in this society, especially the young and the way they're abused. It's a big national problem, but no one seems to know too much about it or care. It's in the families, you know, and it doesn't make any difference whether they're in a rich family or in a poor family. It goes on and on and on in our society, and it probably goes on all over the world. So don't start telling me we're punishing victims. I mean, don't you think before you open your mouth sometimes? I apologize. My father used to say, think twice before you speak once, and then speak twice the better for it. I apologize. You might want to write that down. Yes, Your Honor.  Okay. May it please the Court, my name is James Spertus, and I represent appellant Dennis Burkholder, and I represented Mr. Burkholder at the sentencing proceedings and throughout this case. Nobody disputes that the children depicted in these images are victims. The government's writing seems to create issues that don't exist. The victims absolutely had a right to be heard at sentencing. Mr. Burkholder's position is that they were heard at sentencing. Rule 32 has several procedures designed to get pertinent information before the sentencing judge. In addition, the government has its own vehicles to get pertinent information to a sentencing judge. In this case, the government elected not to file these victim letters under seal before the sentencing judge, and if having these victim statements memorialized in the sentencing record were the government's goal, then the government should have done it that way. They should have filed those statements under seal, and they'd be memorialized right now. But the PSR has lifelong consequences for a defendant. As the Court indicated to me, Well, how do you say that a PSR is supposed to be confidential? And it seems to me that, you know, I mean, you're stretching. Well, Your Honor, the PSR is Go ahead. I apologize. I didn't mean to cut Your Honor off. No, go ahead. The PSR is confidential from public scrutiny, but it's not confidential from the Bureau of Prisons. It impacts what programs a person will qualify for. There are numerous cases where these PSRs are leaked through trustees or guards who have access to private confidential Bureau of Prisons files. It's just Judge Wu's concern was not about declassifying these authors as victims. Instead, his concern was what document will emerge from the sentencing process and follow this defendant in his file throughout the I don't think he was concerned so much about that. But because he ruled that there was matter in there that didn't apply to these defendants and therefore should not be in there. And in any event, very often the PSRs can include the victim statements. It's a matter of discretion, isn't it, for the district attorney? Well, that's not No. Yes, absolutely, Your Honor. Yes, it's a matter of discretion for the court. And the court could have decided not to strike these victim statements. But the dialogue when I asked Judge Wu for clarification on what, in fact, he was doing, revealed that the concern was that the PSR would follow the defendant. And the judge ratified my concern by saying, I want to be clear. I'm just striking them. Well, it's pretty clear in this case. The government and you agreed that a sentence ought to be, I think it was 41 months, wasn't it? Yes, Your Honor. And then it had nothing to do with the victim's impact or what he did when the judge reduced it to 30 months. It was solely based on this man's medical problems. Isn't that right? Yes, Your Honor. So the victim's impact statements were taken into account and didn't apply to the reduction of the sentence, as I understand it. Isn't that right? Yes, Your Honor. The government doesn't contend that, does it? Your Honor, there's a subtlety. May I explain to the court one subtlety? The actual Don't be too subtle around here, though. Thank you, Your Honor. The guideline calculation was above 41 months. There were a lot of factors that led to the government and Professor Green agreeing that you would present that to the court. Yes. And then the court found a further variance and sentenced Mr. Bocholter to 30 months. So that mechanical process emerged from a variety of things, and the victim's statements were considered by this court. I think it would be critical if the court said, I refused to read these victim statements, but instead the court said I was confused by them, which evidently We will agree there is much law out there one way or the other, isn't there? Well, no. You have to rely on our interpretation of the sentencing guidelines. We have to rely on Rule 32. And unless there is prejudicial error, we are not obligated to send it back for sentencing. And as I understand it, what the government is saying is they're not asking that the statements be included and sent to the Bureau of Prisons. They want a new sentencing procedure. And there's no showing that in a new sentencing procedure anything different would happen, including whether or not those statements become part of the PSR. Am I wrong in that assumption? You're correct in that assumption. And in addition to that assumption, I believe the government is seeking a resentencing because they're unhappy with the sentence. But the Well, I didn't see that in this case. Well, Your Honor, they spent so much time, I think, emphasizing, they spent ten pages of briefing emphasizing that these people depicted are victims and the harm that these victims suffered. Well, we know that they were victims. The judge knew they were victims. And as I understand it, the initial agreement on sentence of 41 months was adopted by the court, but he granted further variance, not dealing with the crime, but dealing with his health, which he had a right to do. Yes, Your Honor. Okay. And one other. Mr. Spertus? Yes, Your Honor. Judge Gould, I have a question for you. It's really the same question that I asked Ms. Voice, and that is, is there anything in the statute, and I'll say beyond its general statement of a right to be heard by victims, anything in the statute that says that victim impact statements must be appended to a PSR? No. No, there's not, Your Honor. It says the victims have a right to be heard, and so on. Okay. And your position is they were heard when the judge read those statements? Yes, Your Honor. Okay. Now, let's assume the statements had not been broader than the crime. Assume that the statements didn't get into molestation and things this defendant did, and the statements just said, I'm a victim of child pornography because as long as there's a demand for it, people like me are going to be hurt, or something like that. Would that make any difference? Would the judge have to be required to attach an accurate victim impact statement to a PSR, or is there just no requirement beyond the judge's discretion as to what is in the PSR? Your Honor, no, the judge would not have an obligation to strike or include those narrowly tailored statements. Rule 32, D2F3C, gives a judge discretion to exclude information from the PSR that may be harmful to a defendant. I still would have argued that those letters not be attached, even if they were more narrowly tailored, as the Court has indicated. And the Court would have had discretion. Okay. Okay, thank you for your thoughts. Thank you. I have nothing else. If there are no further questions, I'll conclude. Thank you. Thank you, Your Honor. Thank you. Now, let me ask you this, Ms. Boyd. How many times has ‑‑ take one of these victim impact statements, the one I think we've been generally referring to. How many times has the government used that statement and filed it with a court in various cases, none of which involved that particular victim? The first time I knew about this, I didn't know that there were these ‑‑ the victims would sign these statements and then they could be used in a plethora of cases. They're only used in cases in which the images in the defendant's possession are matched to that particular victim. So, for example, these statements were all made by individuals whose pictures were part of defendant's collection. This young lady that's involved here, how many times were her statements used? I don't know. That's not part of the record. I can certainly try and find that answer out and submit it. I mean, it's just ‑‑ it's just ‑‑ So any time the law enforcement people find these terrible, disgusting pictures on people's computers, that's where they seem to go. And the pictures that they find involve a particular child, it would be then that the impact letter would be used in the sentencing. Yes, Your Honor. Yeah. The statement ‑‑ You see, what you have to remember is in times of change, a lot of things have changed. But we have to have faith in the judgment and the integrity of the sentencing judge. And if we're going to have a fair system, criminal justice and in sentencing, that's what we need. These sentencing guidelines that we have, Supreme Court has said they're illegal, right? And yet we follow them, huh? We follow them. They're illegal. You're nodding your head, so you agree with me. All right. But maybe. So, and it just kind of moves down the line. And then it seems to me that this judge made a reasoned decision in the way he handled this. But yet he's being attacked by the government on appeal as disregarding a victim's rights. That's a terrible thing to say. Your Honor. But there's an attitude out there that I find very unwholesome. Your Honor, we certainly mean no disrespect to the district court judge in this case. To believe that a district court judge may have been mistaken in a particular course of action certainly is not intended as disrespect. But we do think that by, even on the district court's reasoning, which was that portions of these statements were not relevant, the appropriate remedy in that case certainly was not to simply strike all of the statements. Well, let's see. It was confusing. I read it. And, you know, I thought, God, this is terrible. This is terrible. But what I was thinking about was what this girl's father did to her throughout her growing up years. And all of a sudden that sort of, let's just, transferred over to this, I don't know how to describe this person. This guy that's got to buy this stuff for whatever reason. And then in my mind, my anger and disgust, it's focused on him. Because I read that letter, you see. The letter that I read didn't say, well, these things are distributed, the victims. No, they're being distributed. And this creates more anxiety for him. Now, did this young lady know that her statement would appear in this Berkholder case? Did she know this? Yes, Your Honor. My understanding is she did. Well, doesn't that add to her anxiety when you do that? Your Honor, she's, as her statement, she's already aware. Doesn't it? Somebody calls her up and says, oh, there's another picture of yours that appeared, and we're going after this, you know, we're not going after your father who created all these problems. We're going after this idiot, you know, who buys this stuff. And so you have to tell her this? Your Honor. Maybe she's trying to hope it sort of fades a little. If I might address that, the victims can and often do opt out of the system and request not to be notified about these cases. In this case, my understanding is that she does wish to be notified. And, indeed, we wanted us to appeal this issue. Where does it say that victims can opt out of the system? It's part of the victim impact statements when they're provided through NCMEC. Victims can choose to be notified or not. That is my understanding through the process. When they submit the statement, they can also choose going forward not to opt out at any point of the system. Was she told this? Was she told that she could opt out? Yeah. I don't know specifically in her case. My understanding is the general practice is they do understand that they can opt in or opt out. Ms. Voigt, Judge Gould and I, I have another question that's on my mind. Given the theory the government expresses in the appeal, why hasn't the government asked for a remedy of an order that would require the statements to be appended to the PSR and instead is seeking like a resentencing hearing? It makes it look a little bit as if the government's unhappy with the judges sentencing below the agreement, and so it's bringing this other appeal. So there's sort of, in my mind, a disconnect between your theory of your appeal and the remedy you're asking. So could you explain that? Certainly, Your Honor. First, I should note that we certainly would be satisfied by an order simply requiring that the victim impact statements be made part of the record, that they not be struck. We asked for a resentencing because we believed that it was also procedural error because the district court was basing its theory about relevancy on what we believed was an erroneous approach, essentially holding that the defendant was not responsible even though he knew that these images were made. One of the elements of the offense is that he knew that these images were made using an actual minor engaged in sexually explicit conduct. And as the Supreme Court found in Ferber and as other cases across the country have found and as Congress has found, individuals like defendant, when they buy these images, create a market for the ongoing molestation of children. Everybody knows that, and the judge, I think, knew that, and I've written an opinion. I don't know if you've ever read my concurring opinion in a case called Gordy, and maybe two opinions that I've covered that issue. And I don't think anyone in the courtroom doesn't understand that these are victims because of the nature of that business. But my question is, are you really appealing to try to get those attached to the PSR, or are you appealing just to try to get a resentencing because you're not happy with the scope of it? And I can say quite honestly, Your Honor, we would be perfectly happy to have an order simply requiring that the statements be appended to the PSR and that they be included in the transcript. Your Honor, you're still not answering my question exactly. Your Honor, what I can say is that we did not separately appeal the substantive reasonableness of the sentence that was imposed, the 30-month sentence, as indicated by the fact that we agreed to a variance in the binding plea agreement of 41 months, of a sentence of 41 months. Yeah, but he went down to 30 because he got into the, you know, this health of this person. And then, you know, you send somebody to prison and they've been involved in something like this. You know, that person is sometimes lucky to get out alive because the other prisoners would like to kill them, and sometimes that happens. And so it's maybe that's something the judge had in mind, too. But whatever, I'm speculating. But that's the impression I got. Yeah, it was 41 months, and he brought it down to whatever it was, 31 months. And the government just doesn't like that kind of a situation because they want their deals to be what happens, and they don't want the district judge, you know, sticking his nose in that business. He's just a functionary, you know. Your Honor, we haven't appealed the fact that this was imposed, that a different sentence was imposed. But that's the impression you get. You didn't ask that those things be hooked up. You know, I mean, Judge Gould brings up a good point. As I said, we would be perfectly happy with it. You see, you get after the judge. You have to get after the judge. He's not clear. But, you know, when you look at this right from the start, the way those reports were handled with the trial attorney, getting him the last minute, and all these other things that I listened to, this makes me wonder whether how these things are handled sometimes. I think, Your Honor, part of the reason that we asked for a resentencing was in part because the defense complained that they had not, I mean, rightly complained that they had not had a copy of the letters. We thought that by asking for a resentencing, that would allow sort of a remedy that would also. . . Well, you're thinking about the defense now? Is that for their benefit? What we were attempting to do was to try and fashion a remedy that would be acceptable to the court that both respect the victim's rights and because the statements had not been provided to the defense before the hearing, that would allow the defense, if they wanted, additional time to review them and respond to them. That's the reason why we asked for a resentencing, as opposed to simply asking that they use it as part of the record. I hate to ask you another question since you were kind of irrelevant. This is kind of a seldom case, by the way. And I'm wondering, when you take an appeal of a case like this, does the Department of Justice or anybody have to approve the appeal or is this just a decision of the U.S. attorney or the assistant? Yes, Your Honor. Under the statute, we are required to get approval from the Solicitor General, so we did obtain that approval before we filed this case. What was the name of the Solicitor General that approved this? Your Honor, I apologize. I don't remember the name. I mean, it is of the individual who sent the memo. Ms. Voights? Yes, Your Honor. Ms. Voights, do you think you could undertake to see that a transcript of the appellate argument is forwarded to the Solicitor General's office? Yes, Your Honor. Would that be routine? If it's not, it seems to me it might be useful for them to understand some of the concerns that we have. Certainly. I'm not entirely sure how to obtain a transcript. We can certainly make sure they get a copy of the recording, if that would be adequate for the Court's purposes. And I would certainly like to see that. I think it would be. Well, I'd rather have it typed up. Okay. Yeah. People don't listen to recordings. We don't know what the quality is and it should be typed up. And then we'll edit them, you know, we'll see if it's correct. Okay. I'll attempt to find out how to obtain a written transcript. Yeah. I assume if I contact the Court's office. I would think that you could just write a letter to the Solicitor General and say, you know, the Court expressed these concerns. I certainly would be happy to do that. Or it just sounds like, you know, there's a black hole out there. No, we do, after we have arguments, we do report back to the Chief of Appeals, and my understanding is as appropriate, he forwards on information to the appropriate individuals. And I can certainly, I certainly will pass this on to him. Yeah, from my perspective, it would be adequate to have your representation that you're going to pass on the concerns that have been expressed at this argument. And, you know, it doesn't really require, perhaps, that a transcript be prepared. But I think somebody should get a message that, you know, at least I'm just one judge, but I have some real questions in my mind as to the appropriateness of this appeal in light of the relief sought and the circumstances. Certainly, if that is acceptable to the other judges of the panel, then I will represent that I will certainly send that letter. And I'll present it to the Chief of Appeals and have it forwarded on. Because you can listen to the transcript over again, I think on our website, probably. And you have your notes, and you can send your own letter. Thank you, Your Honor. By the way, don't let our comments in any way reflect on your brief and your ability, because I think you've done very well. Thank you. Oh, yeah. You've done a good job, and it's been an absolute delight to have you here. Thank you, Your Honor. And we're just trying to do the best we can. I understand. Thank you, Your Honor. Thank you. I'll be happy to write a letter of recommendation or testing to your skills on request. All right.
judges: Bright, Pregerson, Gould